UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID N.,

                                        Plaintiff,

                v.                                              3:17-CV-1218
                                                                (CFH)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                            OF COUNSEL:

LACHMAN & GORTON                        PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorneys for plaintiff

U.S. SOCIAL SECURITY ADMIN.             DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for defendant

**CHRISTIAN F. HUMMEL,**
**United States Magistrate Judge**

                    <u>**MEMORANDUM-DECISION & ORDER**</u>

        Plaintiff David N. brings this action pursuant to 42 U.S.C. § 405(g) seeking review

of a decision by the Commissioner of Social Security ("Commissioner" or "defendant")

denying his application disability and disability insurance benefits.  Dkt. No. 1

("Compl.").  Plaintiff moves for a finding of disability, and the Commissioner cross

moves for a judgment on the pleadings. (Dkt. Nos. 10 and 13.)  For the reasons set

forth below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's

motion for judgment on the pleadings is granted.  The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1964, making him nearly 50 years old at the amended alleged onset date and 52 years old at the date of the ALJ's decision.  Plaintiff reported completing the twelfth grade as well as some college.  Plaintiff has past work as a firefighter and fire marshal.  At the initial level, Plaintiff alleged disability due to cardiomyopathy, atrial fibrillation, pre-ventrical contractions ("PVCs"), elevated clotting factor 8, gout, a history of deep vein thrombosis ("DVT"), and a history of pulmonary embolism.

### B.    Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on June 5, 2014, alleging disability beginning November 12, 2012.  Plaintiff's application was initially denied on July 18, 2014, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Jennifer Gale Smith on May 3, 2016.  (T. 44-78.) [1]  Plaintiff subsequently amended his alleged onset date to the day before his fiftieth birthday in 2014.  (T. 48-49, 79.)  On August 25,

---

[1]    The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 14-30.) On September 18, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

## C.    The ALJ's Decision

First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018. (T. 19.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date. (*Id.*) Third, the ALJ found that Plaintiff's cardiomyopathy, atrial fibrillation, gout, and dyspnea are severe impairments. (T. 19-20.) Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 20.) Specifically, the ALJ considered Listing 4.02 (chronic heart failure). (*Id.*) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work "except he should not climb ladders, ropes or scaffolds; kneel; crouch; balance; or crawl. He can occasionally climb ramps and stairs, and stoop. [He] also should not work around dangerous machinery or moving mechanical parts of equipment." (T. 20.) Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 23.) Seventh, the ALJ found that Plaintiff is capable of performing other jobs existing in significant numbers in the national economy. (T. 24-25.) Therefore, the ALJ concluded that Plaintiff is not disabled.

3

## D. Arguments

### 1. Plaintiff's Motion for Judgment on the Pleadings

Generally, Plaintiff makes five arguments in support of his motion for judgment on the pleadings. (Dkt. No. 10, at 11-25 [Pl.'s Mem. of Law].) First, Plaintiff argues that the ALJ failed to find Plaintiff's DVT to be severe at Step Two or to include DVT-related limitations in his RFC. (*Id.* at 11-15.) Specifically, Plaintiff argues that he has ongoing DVT with related symptoms and limitations and the ALJ failed to properly account for lifting/carrying limitations and the need to alternate positions caused by Plaintiff's DVT. (*Id.* at 12.) Plaintiff notes Madhuri Yalamanchili, M.D. assessed lifting restrictions and a need to alternate positions hourly, and argues the ALJ erred in affording this opinion little weight and failing to cite any contrary medical opinion (indicating that the opinions of Charles Campbell, M.D., and Paul Dura, M.D., did not consider Plaintiff's DVT). (*Id.* at 12-15.) Plaintiff argues that the ALJ did not give good reasons for failing to give Dr. Yalamanchili's opinion controlling or at least substantial weight. (*Id.* at 15.) Plaintiff also appears to argue that he would be disabled under the Medical-Vocational Guidelines if these limitations -- which exceed the exertional demands of light and sedentary work -- had been included in the RFC. (*Id.* at 13-14.)

Second, Plaintiff argues that the ALJ failed to properly assess Plaintiff's ability to work on a regular and continuing basis. (*Id.* at 15-19.) Specifically, Plaintiff argues that the medical evidence of record shows he cannot meet employer demands for work pace and/or attendance because he would be off-task 10 percent or more of the day from a combination of his impairments. (*Id.* at 16, 19.)

4

Third, Plaintiff argues that the ALJ improperly substituted her opinion for undisputed medical opinions that Plaintiff would be off-task and/or absent at unacceptable levels.  (*Id.* at 19-22.)  Specifically, Plaintiff argues that the ALJ does not point to any medical opinion stating Plaintiff does not have any limitations to work pace less than 10 percent or absences less than one day per month due to his combined impairments.  (*Id.* at 19.)  Plaintiff argues the physicians of record, including cardiologist Dr. Campbell, oncologist Dr. Yalamanchili, and treating physician Dr. Dura, opined on Plaintiff's limitations and found work-pace limitations resulting from different medical conditions.  (*Id.* at 20-21.)  Plaintiff also argues that the ALJ failed to explain why she rejected any such limitations despite the fact that all physicians found at least some limitations.  (*Id.* at 21-22.)

Fourth, Plaintiff contends that the ALJ improperly weighed the medical opinions of record.  (*Id.* at 22-24.)  Plaintiff argues that, contrary to the ALJ's findings, Dr. Campbell's opined limitations regarding time off-task were not speculative, but founded in the limitations caused by Plaintiff's symptoms described in the medical records.  (*Id.* at 22-23.)  Plaintiff also argues that the ALJ did not cite to any contrary medical opinion and that, if she felt the Dr. Campbell's form was vague or ambiguous, she could have asked Dr. Campbell for clarification, particularly in light of the other opinions finding more severe limitations in staying on-task.  (*Id.* at 23.)  Regarding Dr. Dura's opinion, Plaintiff argues that the ALJ never assessed the entirety of the medical evidence to establish the frequency and duration of Plaintiff's gout flares and that Dr. Dura's opinion identified limitations to work pace.  (*Id.* at 23-24.)  Regarding Dr. Yalamanchili's opinion,

Plaintiff again argues that the ALJ erred in giving little weight to the doctor's opined limitations concerning time off-task and absences. (*Id.* at 24.)

Finally, Plaintiff argues that the Step Five determination is not supported by substantial evidence because he should have been found disabled based on the Medical-Vocational Guidelines. (*Id.* at 24-25.) Specifically, Plaintiff argues that the ALJ asked the vocational expert ("VE") a hypothetical question based on an RFC that failed to account for Plaintiff's true limitations with respect to lifting, the need to alternate positions, work pace, and/or absenteeism and that the hypothetical was therefore inaccurate, resulting in unreliable testimony that cannot constitute substantial evidence to support the Step Five determination. (*Id.* at 25.)

## 2. Defendant's Motion for Judgment on the Pleadings

First, Defendant argues that substantial evidence supports the ALJ's determination that Plaintiff was not limited by his DVT diagnosis and that the medical evidence showed that any potential effects of his DVT had resolved prior to the relevant period. (Dkt. No. 13 [Def.'s Mem. of Law] at 7-9.) Defendant also argues that Plaintiff failed to show that any limitations from his DVT would have lasted for more than 12 consecutive months, and, therefore, substantial evidence supports the ALJ's finding that DVT was not a severe impairment. (*Id.* at 9.)

Second, Defendant argues that the ALJ properly weighed Dr. Dura's opinion and afforded it some weight based on a review of the evidence as a whole. (*Id.* at 9-12.) Specifically, Defendant argues the ALJ was merely repeating what Dr. Dura said in

6

crediting the opinion because it limited the restrictions to when Plaintiff was experiencing a gout flare-up, but determining those restrictions were largely irrelevant because such flare-ups were rare. (*Id*. at 11-12.) Defendant contends that the record only reflects two flare-ups total during the relevant period, neither of which were serious enough to warrant immediate medical attention and the latter of which resolved quickly. (*Id*. at 12.)

Third, Defendant argues that the ALJ properly weighed Dr. Campbell's opinion because the ALJ provided good reasons for affording this opinion considerable weight, but rejecting the conclusion regarding time off-task. (*Id*. at 12-15.) Specifically, Defendant argues that the ALJ rejected the off-task portion of this opinion because it was speculative and found that Plaintiff's treatment notes did not support any such limitation. (*Id*. at 13.) Defendant also argues that any error in discounting Dr. Campbell's opinion is harmless because the ALJ gave two other reasons for rejecting this opinion and that the ALJ was allowed to reject Dr. Campbell's opinion on the ground that it was unsupported by the record, rather than having to cite to another medical opinion that contradicted it. (*Id*. at 14.) Defendant argues the ALJ correctly criticized the form because it forced Dr. Campbell into finding that Plaintiff would be off-task for 10 percent or less of the workday, rather than making any assumptions that the form completed was vague or ambiguous, as argued by Plaintiff. (*Id*. at 14-15.)

Finally, Defendant argues that Plaintiff failed to demonstrate that the RFC was unsupported by substantial evidence and that it is not enough for Plaintiff to merely

7

disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. (*Id.* at 15-16).

## II.    LEGAL STANDARDS

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Sequential Evaluation Standard**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based

9

> solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations. If the claimant
> has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age,
> education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform
> his past work. Finally, if the claimant is unable to perform his
> past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform. Under the
> cases previously discussed, the claimant bears the burden of
> the proof as to the first four steps, while the [Commissioner]
> must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758

F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can

be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S.

20, 24 (2003).


### III.    ANALYSIS

### A.    Whether the ALJ Properly Considered Plaintiff's DVT at Step Two

At Step Two, the ALJ must determine whether the claimant has a severe

impairment that significantly limits his physical or mental abilities to do basic work

activities. 20 C.F.R. § 404.1520(c). Basic work activities include walking, standing,

sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking,

understanding, remembering and carrying out simple instructions, using judgment, and

responding appropriately to supervision, co-workers, and usual work situations. *Taylor*

*v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, 07-CV-

10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)).  "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe."  *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Overall, the claimant retains the burden of presenting evidence to establish severity.  *Id.* (citing *Miller v. Comm'r of Soc. Sec.*, 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes (1) there is at least one other severe impairment, (2) the ALJ continues with the sequential evaluation, and (3) the ALJ provides explanation showing she adequately considered the evidence related to the impairment that is ultimately found non-severe.  *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, 09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), *Report and Recommendation adopted by* 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summar order) (finding that any error in failing to find the plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

Here, the ALJ found Plaintiff's cardiomyopathy, atrial fibrillation, gout, and dyspnea to be severe impairments. (T. 19.) Plaintiff argues that the ALJ erred in failing to find Plaintiff's DVT to be severe at Step Two or to include DVT-related limitations (including lifting/carrying limitations and the need to alternate positions) in his RFC. (*Id.* at 11-15.) Plaintiff also argues that the ALJ erred in affording little weight to Dr. Yalamanchili's opinion -- which assessed lifting restrictions and a need to alternate positions hourly -- and failing to cite any contrary medical opinion, noting that the opinions of Drs. Campbell and Dura did not consider Plaintiff's DVT. (*Id.* at 12-15.) The Court finds these arguments unpersuasive for the following reasons.

First, the ALJ's analysis at Step Two states that recurrent DVTs among Plaintiff's other non-severe impairments were "either resolved, required little or not treatment, or [had] been adequately controlled with treatment, and none [had] imposed more than minimal limitations on [Plaintiff's] ability to perform basic work activities for a continuous period of at least twelve months." (T. 19-20, citing 20 C.F.R. § 404.1509.) The ALJ's overall decision also provides sufficient explanation indicating that she adequately considered the evidence related to Plaintiff's alleged impairments, including those she did not find to be severe. (T. 19-23.) *See Fuimo*, 948 F. Supp. 2d at 269-70; *Reices-Colon*, 523 F. App'x at 798. In the alternative, the Court finds that any error by the ALJ in failing to find Plaintiff's DVT severe would be harmless because she did find other impairments severe, continued with the sequential evaluation, and provided adequate explanation in her decision showing she properly considered the evidence related to Plaintiff's various impairments. *Id.*

12

Second, as discussed further in Section III.B.i. of this Memorandum-Decision & Order, the Court finds that the ALJ properly considered the opinion evidence of record, including Dr. Yalamanchili's opinion regarding Plaintiff's DVT and related limitations. (T. 23.) Specifically, the ALJ provided reasons for the weight afforded to Dr. Yalamanchili's opinion, including that it was speculative and his last treatment note was from June 18, 2015, at which time he indicated Plaintiff reported he was tolerating Coumadin well and denied any increased swelling or aching in his legs. (T. 23, 544.) The ALJ also noted that in June 2014, Dr. Yalamanchili indicated Plaintiff was tolerating Coumadin well and did not have any further evidence of thrombosis. (T. 23, 543.) The Court notes that inconsistency or lack of support from the evidence can constitute a good reason for rejecting an opinion even from a treating physician. *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007)); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (indicating that the extent that an opinion is consistent with the record as a whole is one of the factors considered when determining the amount of weight to which an opinion is entitled).

13

Therefore, for the reasons above, the ALJ's findings regarding Plaintiff's impairments at Step Two are supported by substantial evidence, and remand is not required on this basis.

**B.  Whether Substantial Evidence Supports the ALJ's Analysis and Findings Regarding the Opinion Evidence and Plaintiff's RFC**

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"  *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation."  *Blinkovitch v. Comm'r of Soc. Sec.*, 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *Report and Recommendation adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)).  After considering these

14

factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Here, the ALJ found that Plaintiff can perform a modified range of light work. (T. 20.) In so doing, the ALJ considered the various opinions of record along with Plaintiff's testimony and treatment. (T. 21-23.)

### i. The ALJ's Analysis of the Opinion Evidence

In April 2016, Dr. Yalamanchili completed a medical source statement noting a diagnosis of unexplained DVTs that required Coumadin and that Plaintiff also had occasional palpitations and chest discomfort. (T. 545.) Dr. Yalamanchili opined that Plaintiff's condition caused pain and fatigue, and that the condition, pain from the condition, and/or side effects of medication could diminish work pace and require rest at work. (*Id.*) He opined that Plaintiff would be off-task more than 33 percent of the day and that his condition would produce good days and bad days, leading to three absences per month. (T. 546.) Dr. Yalamanchili opined Plaintiff could sit for approximately six hours out of an eight-hour day, could occasionally lift up to five pounds, and should change positions every 60 minutes. (T. 546.) He also indicated that side effects of Coumadin included chest pain, headaches, swelling, dizziness, or passing out. (*Id.*) The ALJ afforded this opinion little weight, indicating that it was speculative and noting Dr. Yalamanchili's treatment notes from June 2014 and June 2015 noted Plaintiff was tolerating Coumadin well, without increased swelling or aching in the legs or further evidence of thrombosis. (T. 23.)

In late April 2016, Dr. Dura completed a medical source statement noting a diagnosis of gout, which was stable with no recent flares in the past year. (T. 565.) Dr.

Dura indicated that Plaintiff would be off-task more than 15 percent (but less than 20 percent) during times of a gout flare and gout would be expected to produce good and bad days causing one absence or less per month. (T. 565-66.) Dr. Dura noted that the off-task limitations would apply only during a gout flare and that Plaintiff had not had any recent gout flares. (*Id.*) He opined that Plaintiff could sit for eight hours of an eight-hour day, stand/walk for eight hours of an eight-hour day, and frequently lift over ten pounds. (T. 566.) The ALJ gave this opinion at least some weight, noting that Dr. Dura made it very clear that the limitations identified applied only during a gout flare and noted that, as of April 26, 2016, Plaintiff's gout was stable and he had not had any recent gout flares in the previous year. (T. 23, 552-66.)

In an undated medical source statement, Dr. Campbell noted Plaintiff's conditions included hypertension, hypercoagulable state, palpitations with a history of paroxysmal atrial fibrillation, cardiomyopathy with normalization of left ventricular function as of December 2013. (T. 548.) Dr. Campbell opined that these conditions would cause fatigue and that Plaintiff would be off-task 10 percent or less of the time. (*Id.*) He also indicted these conditions would be expected to produce good days and bad days, but noted that it was unknown how many absences would occur. (T. 548-49.) Dr. Campbell noted that side effects of Plaintiff's medications included fatigue and slowed heart rate. (T. 549.) He opined that Plaintiff could sit for eight hours out of an eight-hour day, could stand/walk for eight hours out of an eight-hour day, could frequently lift over 10 pounds, and should change positions every 120 minutes. (T. 549.)

Dr. Campbell also testified at a hearing in February 2016 relating to Plaintiff's application for New York State duty disability retirement benefits and indicated that Plaintiff's ability to perform activities associated with being a firefighter was somewhat limited. (T. 21, 179.) He indicated that Plaintiff would have limitations in activities when in extreme climate change conditions (such as very high temperatures) and for carrying heavy items up ladders or stairs. (*Id.*) Dr. Campbell opined that Plaintiff would probably not be able to persist very long in activities requiring him to repeatedly go up and down a ladder or stairs in stressful head conditions and that he would probably fatigue easily. (T. 22, 180.)

The ALJ afforded great weight to Dr. Campbell's opinions in general as he was a treating specialist and the objective evidence of record supported most of his opinions. (T. 22, 298, 313, 335, 343, 347, 455, 509.) The ALJ also indicated that Dr. Campbell's opinions were largely consistent with Plaintiff's reported activities. (T. 22, 249-59, 302, 368, 388, 400, 412, 559.) The ALJ noted that Dr. Campbell's opined limitations regarding time off-task were purely speculative and that the form he completed did not offer an option less limiting than 10 percent time off-task or less. (T. 21 n. 1, 22, 548-50.)

The ALJ also noted treating physician Kimberly DeSantis, M.D., opined in January 2013 that Plaintiff was permanently disabled as a firefighter, and that Stephen Nash, M.D., opined in May 2014 that Plaintiff was permanently disabled from the job of Fire Marshal I. (T. 23, 606.) The ALJ gave these opinions some weight, noting that, although they were conclusory, they were not inconsistent with one another or with the

18

objective medical evidence of record. (T. 23.) The ALJ also noted the RFC was not inconsistent with these opinions. (*Id.*)

Finally, the ALJ noted that Adel Soliman, M.D. opined in September 2014 that Plaintiff was not disabled from a cardiovascular standpoint with regard to performing his duties as a fire marshal, which the ALJ indicated was inconsistent with a preponderance of the evidence. (T. 23, 600.) The ALJ afforded less weight to Dr. Soliman's opinion that Plaintiff could continue to perform his duties as a fire marshal. (T. 23.)

### ii.    The Court's Analysis

Plaintiff argues that the ALJ (1) failed to properly assess Plaintiff's ability to work on a regular and continuing basis, (2) improperly substituted her opinion for undisputed medical opinions that Plaintiff would be off-task and/or absent at unacceptable levels, (3) failed to explain why she rejected any such limitations despite the fact that all physicians found at least some limitations, and (4) improperly weighed the medical opinions of record. (Dkt. No. 10, at 15-24 [Pl.'s Mem. of Law].) The Court finds these arguments unpersuasive for the following reasons.

First, the ALJ's analysis and resulting RFC indicate sufficient consideration of the various medical opinions, the medical evidence pertaining to Plaintiff's impairments and treatment, and Plaintiff's testimony. (T. 19-23.) In her decision, the ALJ indicated she had considered Plaintiff's symptoms based on the requirements of 20 C.F.R. § 404.1529 and SSR 96-4p and had considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

(T. 21.)  It is apparent from the decision that the ALJ adequately considered the evidence of record, contrary to Plaintiff's argument that the ALJ never assessed the entirety of the medical evidence to establish the frequency and duration of Plaintiff's gout flares in weighing Dr. Dura's opinion.  (T. 19-23; Dkt. No. 10, at 23-24 [Pl.'s Mem. of Law].)

Second, the ALJ's analysis provides sufficient consideration of the opinions of record and specific reasons for the weight afforded to each of them (as noted above in Section III.B.i. of this Decision and Order), reasons which the Court finds supported by the objective evidence of record.  (T. 21-13.)  Plaintiff argues that the ALJ substituted her own opinion for that of the medical sources of record and improperly failed to cite to contrary evidence in discounting portions of the various opinions.  (Dkt. No. 10, at 13-14, 19-21, 23-24 [Pl.'s Mem. of Law].)  However, it was within the ALJ's purview to resolve any material conflicts in the evidence and various opinions of record.  *See Bliss v. Colvin*, 13-CV-1086, 2015 WL 457643, at \*7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, 12-CV-1596, 2014 WL 1123477, at \*10 (N.D.N.Y. Mar. 21, 2014).  This Court will not now reweigh that evidence which was before the ALJ.  *See Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence'" where that resolution is supported by substantial evidence) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); citing *Lamay v. Comm'r of Soc.*

20

*Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

For the reasons outlined above, the ALJ's analysis of the opinion evidence as well as the resulting RFC are supported by substantial evidence. Remand is therefore not required on these bases.


**C.      Whether Substantial Evidence Supports the ALJ's Step Five Finding**

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and] . . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee*, 631 F. Supp. 2d at 211 (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

After determining the RFC, the ALJ found that Plaintiff is unable to perform past relevant work based on the VE testimony. (T. 23-24, 67-68.) The ALJ then found, based on the VE's testimony, that Plaintiff could perform other jobs existing in significant numbers in the national economy, including gate guard, security guard, and checker I. (T. 18, 24-25, 67-68.) Plaintiff argues that the Step Five determination is not supported by substantial evidence because (1) he should be found disabled based on the Medical-Vocational Guidelines; and (2) the ALJ posed a hypothetical question which did not account for Plaintiff's true limitations with respect to lifting, the need to alternate positions, work pace, and/or absenteeism (Dkt. No. 10, at 24-25 [Pl.'s Mem. of Law].) The Court finds these arguments to be without force.

As discussed in Sections III.A. and III.B. of this Memorandum-Decision & Order, the Court determines that the ALJ's findings regarding Plaintiff's impairments and RFC are supported by substantial evidence. The ALJ's decision provides sufficient, supported explanation for her findings, and Plaintiff has not established that he should be found disabled pursuant to the Medical-Vocational Guidelines. The hypothetical posed to the VE accurately reflected the RFC, which the Court has found to be supported by substantial evidence. (T. 20, 67-68.)

Therefore, the Court finds that the ALJ's Step Five finding is supported by substantial evidence, and remand is not required on this basis.

## IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED,** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED,** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED,** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED,** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: February 14, 2019
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge